**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**JERRY L. KEETER, JR.,**

      **PLAINTIFF,**

v.                                         **Civil Case No.:  2:06cv440**

**JOANNE B. BARNHART,**
**Commissioner of the**
**Social Security Administration,**

      **DEFENDANT.**

**OPINION and ORDER**

Jerry L. Keeter, Jr. ("Keeter" or "Plaintiff") brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the decision of the Administrative Law Judge ("ALJ") which denied his claim for Social Security disability benefits.  Doc. 1 (Complaint filed August 2, 2006).  Both Plaintiff and Commissioner of the Social Security Administration ("Commissioner" or "Defendant") have filed motions for Summary Judgment and supporting memoranda.  Docs. 13 (Plaintiff's Motion for Summary Judgment filed November 29, 2006), 14 (Memorandum in Support of Plaintiff's Motion for Summary Judgment filed November 29, 2006), 15 (Defendant's Motion for Summary Judgment filed December 28, 2006), 16 (Memorandum in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment filed December 28, 2006).

Plaintiff claims the ALJ erred by (1) failing to properly weigh the opinion of his treating physician, (2) "relying on the findings of a medical consultant who never personally examined Keeter," and (3) ultimately concluding that Plaintiff "is able to perform light unskilled work." Doc. 14 at 3, 8-11.

Because the Record shows the ALJ's decision was based on substantial evidence, Plaintiff's Motion is **DENIED**, and Summary Judgment is **GRANTED** in favor of Defendant. Accordingly, the decision of the Commissioner is **AFFIRMED**.

I. PROCEDURAL HISTORY[1]

Prior to Plaintiff's instant application for social security disability benefits, "Keeter filed prior applications for benefits on August 7, 1996; August 18, 1997; and March 4, 1998; all of which were denied by the State Agency at the initial or reconsideration levels, with no further appeals." R. 20. Since then, another application for benefits, which was filed on November 4, 1998, was denied through the hearing level by decision issued on February 25, 2000. R. 20. Plaintiff appeared with counsel and testified at the hearing regarding his November 4, 1998 claim. R. 341. The ALJ issuing the February 25, 2000 decision found Plaintiff could perform a "limited range of light work . . . existing in significant numbers in the national economy," and thus concluded Plaintiff was not disabled. R. 20. In every determination regarding Plaintiff's previous claims, the reviewing authority determined Plaintiff's condition was not severe enough to keep him from working, despite Plaintiff's persistent contention that his multiple physical and mental deficits prevented him from doing so. R. 38, 40, 42, 43-47, 50-52, 338-352.

On April 28, 2004, Plaintiff again filed for benefits "alleg[ing] disability beginning May 21, 2003" resulting from a variety of physical and mental ailments. R. 20, 387, 415. "The claims were denied initially and upon reconsideration." R. 20, 366, 373-75, 686-88. On March

---

[1] This section does not necessarily state the entire procedural history of this case, but rather states those events necessary for consideration of the issue(s) before the Court. As neither party has contested the procedural history set forth by the ALJ, a portion of the procedural history is drawn from the ALJ's decision as noted at Record ("R.") 20-21.

8, 2006, Plaintiff, having timely requested a hearing, appeared and testified at a hearing on his

claim before the ALJ and was represented by counsel.  R. 20, 30-34, 376-378, 692-706.

On April 12, 2006, the ALJ issued a decision unfavorable to the Plaintiff, finding

Plaintiff was and had not been disabled as he claimed and therefore was not entitled to disability

benefits.  R. 17-29.  On June 1, 2006, The Appeals Council of the Social Security Administration

denied Plaintiff's request for appellate review of the ALJ's decision.  R. 12-14.

On August 2, 2006, Plaintiff filed a Complaint in this Court, seeking judicial review of

the ALJ's decision.  Doc. 1.  On October 24, 2006, the Court referred the case to United States

Magistrate Judge James E. Bradberry "to conduct hearings . . . and submit . . . proposed findings

of fact . . . and a recommendation for the disposition of this matter."  Doc. 10 (Order).  On

August 6, 2007, the Court rescinded its prior referral order and assumed the case for decision.

Doc. 17.  Both Plaintiff and Defendant have filed motions for Summary Judgment and

supporting memoranda.  Docs. 13-16.

## II. FACTUAL HISTORY[2]

### A. Biographical Information and Previous Complaints of Plaintiff

Keeter is currently forty-five (45) years old, a high school graduate, and can read and

write.  R. 387, 693.  Plaintiff was employed as a pipefitter through 2003, while also installing

vinyl siding.  R. 694-95.  After a previous ALJ's decision on February 25, 2000 which ruled

Plaintiff was not disabled and was able to work, and was contrary to his persistent claims that he

was unable to work due to his mental and physical status, Plaintiff earned $9,683.49 in 2000,

$24,081.91 in 2001, $31,958.50 in 2002, and $12,682.00 in 2003.  R. 341-351, 395, 400.  The

---

[2] The factual history as described in this section only relates to those issues claimed as errors by Plaintiff in his
motion for Summary Judgment and supporting memorandum, and does not include other aspects of the case unless
necessary to provide a more complete description.

bulk of Plaintiff's earnings resulted from his association with Bay Side Contracting, Inc. as a pipefitter from 2001 through 2003.  R. 400, 704.

## B.  May 6, 2003 Injury, Resulting Surgery and Recovery

On May 6, 2003, Plaintiff was attended to by George A. MacLaren, M.D. ("Dr. MacLaren"), who noted Plaintiff complained "of neck pain radiating to the left upper arm which started yesterday morning" and did "not recall any injuries."  R. 514.  Several weeks later, on May 21, 2003, Petra Gurtner, M.D. ("Dr. Gurtner") drafted a letter to Dr. MacLaren indicating Plaintiff's neck and shoulder pain resulted from "lifting heavy expansive loops weighing about 80 lbs. above his head on May 5."  R. 548-49.  On July 21, 2003, Plaintiff underwent a surgical procedure to repair a new disk rupture in his neck.  R. 459-60, 697.  Dr. Gurtner's letter of October 23, 2003 indicated Plaintiff's surgery "pretty much resolved" his neck and shoulder pain, and that examination showed "good fusion and good alignment."  R. 543.  Another doctor, Yan Gao, M.D. ("Dr. Gao") reviewed his post operative tests, and noted "good healing" and "good fusion" were suggested.  R. 553, 555.  Additionally, March 5, 2004 progress notes from Churchland Psychiatric Associates indicate Plaintiff's neck surgery was "successful," that he had a "good recovery," and that "pain is no longer a problem."  R. 8, 490.  On February 8, 2005, Dr. Gurtner detailed his assessment of Plaintiff's most recent EMG study, noted below, did not recommend further surgery, and stated that he cautioned Plaintiff from engaging in "any kind of heavy work."  R. 677.  Dr. Gurtner did not state that Plaintiff could not perform any kind of work at all, but rather limited his advice to "heavy work."  R. 677.  On August 11, 2005, Plaintiff was seen by Dr. Gurtner after experiencing pain as a result of "lifting up heavy logs."  R. 676.  Dr. Gurtner then spent "[a]pproximately 20 minutes" discussing appropriate and inappropriate activities in light of his physical limitations.  R. 676.

On several occasions, Plaintiff was offered physical therapy to assist him in his recovery from neck surgery, but declined.  R. 511, 540.

### C.  Objective Tests During and Since 2004

Several objective tests conducted during and since 2004 include:

1.      February of 2004 MRI showing "mild degenerative change of the L4-5 intervertebral disc."  R. 550.
2.      March of 2004 EMG study resulting in an "essentially normal" finding.  R. 462.
3.      January of 2005 Cervical Spine MRI indicating "mild to moderate degenerative disc disease."  R. 535-36.
4.      January of 2005 Brain MRI showing "unremarkable" results.  R. 537-38.
5.      January of 2005 EMG study indicating "chronic multi-level cervical radiculopathy and a bilateral carpal tunnel syndrome."  R. 677, 682.

Additionally, other examinations during and since 2003 showed that Plaintiff walked with a normal gait, experienced no lower extremity weakness or limitation, endured no significant loss in motor strength or behavior, was capable of a normal or "minimally weak" hand grip, and a enjoyed a "good" range of cervical motion.  R. 466, 534, 539-40, 542-44, 547-48, 591, 660, 673, 675-77.

### D.  Psychological Treatment

During Plaintiff's treatment for his alleged psychological deficits, treating medical professionals observed Plaintiff display adequate concentration, an intact memory, an alert disposition, orientation in all spheres, good or fair judgment, logical thought processes, and adequate responses to psychological treatment.  R. 466, 473, 483, 487-88, 500-01, 503, 508, 540, 547-48, 590, 661-63, 665, 668, 669-70, 673.

On February 1, 2005, E. Daniel Kay, Jr., M.D. ("Dr. Kay") conducted a medical examination of Plaintiff and stated his findings in a form report and "To Whom it May Concern" letter.  R. 586-88.  He concluded Plaintiff was unable to work, due to the following concerns:

1.      Lifting greater than 1 pound;
2.      Bending over / stooping down / reaching for objects;
3.      Manual dexterity activities including typing and handling small objects;
4.      Standing for greater than 1 hour at a time;
5.      Climbing four to six steps; and
6.      Interpersonal relationships with co-workers.

R. 587. Despite these restrictive conditions, Dr. Kay's form suggested future employment was possible as "skills training in an occupation within his/her health-related limitations" was approved. R. 587. Additionally, Dr. Kay indicated Plaintiff was complying with prescribed physical therapy, counseling and other treatments, and is complying with his medication schedule. R. 587. Dr. Kay's specific determination was that Plaintiff was unable to work for an anticipated duration of "greater than 90 days," with a specific estimate of "270 [days] – permanent." R. 586.

In Dr. Kay's one page "To Whom it May Concern" letter, dated February 7, 2005, he indicates Plaintiff then suffered from "both psychiatric and neurosurgical/neurological problems," "a severe disc disease in both his neck and low back," "Carpal Tunnel Syndrome," and "Bipolar I Disorder which has caused some problems for him in terms of stability of mood, energy, and sleep." R. 588. The letter went on to conclude, contrary to the form regarding compliance with medication schedule, that "[h]e is sometimes not able to maintain himself on the medicine and has times when he is unable to go to work, even if he were pain free." R. 588. Dr. Kay concluded Plaintiff was "unable to work at this time" and would "probably" be unable to work permanently. R. 588.

E.   Plaintiff's Activity Level and Lack of Enthusiasm to Work

During the claimed period of disability, Plaintiff engaged in numerous physical and mental activities, including:

1.      Preparing and cooking his own meals;

2.       Doing laundry;
3.       Mowing the lawn on a riding lawn mower;
4.       Raking;
5.       Performing repair work;
6.       Driving a car;
7.       Managing his financial affairs;
8.       Fishing;
9.       Vacuuming;
10.      Playing poker;
11.      Golfing;
12.      Deer Hunting;
13.      Staying alone and caring for himself at his parent's cottage in North Carolina;
14.      Digging Ditches;
15.      Painting and air-brushing; and
16.      Gambling.

R. 405-07, 425-27, 483, 485, 540, 658, 661, 663, 665, 668, 695-96, 701.  Additionally, Plaintiff

showed himself to be resistant to vocational counseling and office work.  R. 488, 504, 506, 540.

As mentioned, Plaintiff also failed to avail himself to opportunities for physical therapy.  R. 511,

540.

### F.  State Agency Physician Reports

On August 27, 2004, Dr. Robert F. Castle ("Dr. Castle") detailed his findings regarding a

Physical Residual Functional Capacity Assessment ("PRFCA") performed on Plaintiff, which

also considered all then existing medical information in Plaintiff's file.  R. 476-82.  Therein, Dr.

Castle indicated Plaintiff may perform light work with no overhead reaching and certain postural

limitations imposed.  R. 476-82.  Additionally, on February 1, 2005, Dr. Michael Cole ("Dr.

Cole") stated his conclusions regarding an additional PFRCA conducted on Plaintiff, which

again weighed the medical information in Plaintiff's file.  R. 573-79.  Dr. Cole's report echoes

the assessment performed by Dr. Castle.  R. 573-79.

Regarding Plaintiff's other alleged reason for not being able to work, that he is mentally

incapable of doing so, two State Agency mental health professionals rendered reports.  R. 556-

72.  On August 23, 2004, Dr. Daniel Walter ("Dr. Walter") concluded upon consideration of Plaintiff's stated difficulties, abilities and prior mental health history, that "[t]he mental limitations are present, but are not so severe as to be disabling . . . [and] do not prevent the claimant from doing simple and routine work activity."  R. 558.  On January 28, 2005, Dr. Sreeja Kadakkal adopted the initial decision of Dr. Walter, after considering Plaintiff's progress.  R. 559.

### G.  Hearing Testimony

At hearing on Plaintiff's most recent claim before the ALJ, Plaintiff testified he was prevented from working this time due to the combination of bipolar disorder, depression and physical pain in his neck and arm.  R. 698.  Keeter also stated he experienced problems with his lower back.  R. 698.  Plaintiff asserted his mental health treatment was doing him good, but countered that he could not hold a job because of his frequent bouts with depression and bipolar disorder.  R. 700-01.  Despite asserting his inability to maintain employment, Plaintiff stated he "hunted a couple of times during deer season on my grandparents' land in Carolina by [himself]" and fished on one occasion.  R. 701.  Plaintiff also testified to problems concentrating and being around crowds of people.  R. 702.

Barbara K. Byers, a vocational expert with years of experience in her field, testified regarding work opportunities available to Plaintiff.  R. 381-386.  She testified a hypothetical individual, with similar attributes to those possessed by Plaintiff, would be employable in tens of thousands of job positions in Virginia and over one million job positions nationwide.  R. 704-05.

III.  LEGAL PRINCIPLES

A.  Standard of Review

Plaintiff seeks judicial review of the decision of the Commissioner, which denied his

claim for disability benefits.  Doc. 1.  In reviewing the decision of the Commissioner, "any fact,

if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The substantial

evidence standard requires "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion," and is further defined as "more than a mere scintilla."

Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted).  This standard "may [require]

somewhat less than a preponderance" of the evidence.  Laws v. Celebrezze, 368 F.2d 640, 642

(4th Cir. 1966).  Stated differently, the substantial evidence standard "must do more than create a

suspicion of the existence of the fact to be established . . . [which] must be enough to justify, if

the trial were to a jury, a refusal to direct a verdict" on an issue of fact.  Universal Camera Corp.

v. National Labor Relations Bd., 340 U.S. 474, 477 (1951); Shively v. Heckler, 739 F.2d 987,

989 (4th Cir. 1984) (citation omitted).

The Court's "inquiry must terminate" if substantial evidence supports the

Commissioner's factual finding.  Laws, 368 F.2d at 642.  "[I]t is not within the province of [the]

[C]ourt to determine the weight of the evidence, nor is it the court's function to substitute its

judgment for that of the [Commissioner] if his decision is supported by substantial evidence."

Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citations omitted); Law, 368 F.2d at 642

(citation omitted).  The duty to "make findings of fact and to resolve conflicts in evidence" rests

with the ALJ and not the Court.  Hays, 907 F.2d at 1456; Seacrist v. Weinberger, 538 F.2d 1054,

1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the Secretary and not the courts

to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk

of nonpersuasion."). Similarly, "[g]reat weight" is accorded "to the hearing examiner's findings

where credibility of witnesses is involved." <u>Laws</u>, 368 F.2d at 644 (citations omitted).

B. <u>Disability Definition</u>

To qualify for either disability insurance benefits or supplemental security income, as

originally claimed by Keeter,[3] Plaintiff must show he is and/or was disabled. R. 20; 42 U.S.C.

§§ 416(i), 423(d), 1381a, and 1382. Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 423(d)(1)(A). Furthermore,

42 U.S.C. § 423(d)(2)(A) requires:

> An individual shall be determined to be under a disability only if his physical or mental
> impairment or impairments are of such severity that he is not only unable to do his
> previous work but cannot, considering his age, education, and work experience, engage in
> any other kind of substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be hired if he applied
> for work. For purposes of the preceding sentence (with respect to any individual), "work
> which exists in the national economy" means work which exists in significant numbers
> either in the region where such individual lives or in several regions of the country.

Also, "[a]n individual shall not be considered to be under a disability unless he furnishes such

medical and other evidence of the existence thereof as the Commissioner of Social Security may

require." 42 U.S.C. § 423(d)(5)(A). Similarly, "a psychological disorder is not necessarily

disabling," unless a "related functional loss" is also proven. <u>Gross v. Heckler</u>, 785 F.2d 1163,

1166 (4th Cir. 1986) (citation omitted).

---

[3] Presently, Keeter only seeks judicial review of the ALJ's determination regarding disability benefits, and does not
contest the decision as to supplemental security income. Doc. 1. In any event, the Court's decision in this matter
forecloses either argument, as similar legal principles govern both claims.

C.  Medical Evidence and Other Evidence

In considering medical opinions, the Commission is required to consider the following

factors in weighing the opinion:

1.   Examining relationship;
2.   Treatment relationship;
    a.  Length of the treatment relationship and the frequency of examination;
    b.  Nature and extent of the treatment relationship;
3.   Supportability ("The better an explanation a source provides for an opinion, the
     more weight we will give that opinion.");
4.   Consistency ("with the record as a whole"); and
5.   Specialization.

20 C.F.R. § 404.1527(d); See also 20 C.F.R. § 416.927(d) (regarding a similar analysis for

supplemental security income which Plaintiff has not appealed).[4]  Additionally, a statement from

a physician that the claimant is "disabled" does not foreclose the Commission's decision, but,

rather, the determination of disability rests with the Commission upon consideration of all the

evidence.  20 C.F.R. § 404.1527(e)(1).  Additionally, the ALJ is required to "consider opinions

of State agency medical or psychological consultants, other program physicians and

psychologists, and medical experts" as they are "highly qualified physicians and psychologists

who are also experts in Social Security disability evaluation," but is not bound to the conclusions

of these experts.  20 C.F.R. § 404.1527(f)(2); See also 20 C.F.R. § 416.927(f)(2) (regarding

supplemental security income claims).  While the testimony of treating or examining physicians

is generally preferred, "the testimony of a non-examining physician can be relied upon when it is

---

[4] Plaintiff asserts that under Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987), the treating physician rule
requires that "if the ALJ ignores the treating physician's opinion and no persuasive contradictory evidence exists,
this misapplication of the law, by itself, will warrant reversal."  Doc. 14 at 8.  However, Plaintiff's legal analysis is
without merit, as Coffman's legal conclusion on this point has been superseded by statute, which details the ALJ's
proper consideration of a physician's medical opinion in light of the other medical evidence.  Stroup v. Apfel, No.
96-1722, 2000 U.S. App. LEXIS 2750, at *12-14 (4th Cir. February 24, 2000) (citing 20 C.F.R. § 404.1527 among
other sources) (unpublished); Winford v. Chater, 917 F. Supp. 398, 400-01 (E.D. Va. 1996) (Smith, J.) (citations
omitted).

consistent with the record." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (citation omitted).

In addition to medical evidence regarding an alleged disability, the ALJ should also consider the effect of the claimant's condition on his everyday activities. Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)). Similarly, the Commissioner "can deny benefits if a person unjustifiably refuses treatment" or willfully and unnecessarily contributes to his own health problems. Gordon, 725 F.2d at 236 (concerning smoking and alcohol abuse as reasons to deny benefits).

IV. ANALYSIS

A. Dr. Kay's Opinion

Plaintiff initially argues the ALJ failed to give controlling weight to Dr. Kay's opinion that Keeter was disabled due to mental and physical health reasons. Doc. 14 at 8-11. The Court **FINDS** there is substantial evidence in the record to support the ALJ's conclusion that Dr. Kay's opinion did not prove a disability in light of the other evidence in the case. The Court also concludes the ALJ's discussion of his analysis of Dr. Kay's opinion and the remaining evidence was thoughtful, thorough and in compliance with the law.

1. *Dr. Kay's Opinion*

In consideration of the opinion of a medical professional regarding a claimant's disability, the fact finder is instructed to review the opinion in light of the professional's specialization, the opinion's level of articulation and persuasiveness, and the opinion's conformance to other aspects of the medical record. 20 C.F.R. § 404.1527(d). The opinion of a

treating professional will not be given controlling weight if it is contradicted by other substantial evidence in the case.  20 C.F.R. § 404.1527(d).

Initially, Dr. Kay's opinion is facially deficient regarding any physical assessments made, as he served as Keeter's mental health professional only.  R. 583.  Accordingly, Dr. Kay's conclusions regarding Keeter's ability to lift, bend, stoop, type, handle small objects, stand, and climb are entitled to no weight based on the limitations of Dr. Kay's role with Plaintiff.  R. 587. The Court further notes Dr. Kay's conclusion regarding Keeter's lifting ability is at odds with Keeter's determination that he could lift over fifteen (15) pounds.  R. 416, 587.  Moreover, physical and medical tests performed by other professionals directly contradict Dr. Kay's conclusion regarding Keeter's physical strength and ability.  R. 462, 466, 534-38, 539-40, 542-44, 547-48, 550, 591, 660, 673, 675-77, 682.  Additionally, Keeter's stated physical activities during the relevant time period show his alleged limitations to be false.  R. 405-07, 425-27, 483, 485, 540, 658, 661, 663, 665, 668, 695-96, 701.  Accordingly, the Court **FINDS** Dr. Kay's opinion regarding Keeter's physical limitations is contradicted by substantial evidence to the contrary, and also notes Dr. Kay acted solely as Keeter's mental health professional.

Dr. Kay's only specific conclusion regarding Keeter's mental condition states he has trouble with "interpersonal relationships with co-workers," without further explanation.  R. 587. This statement, alone, can hardly support the finding of disability as requested by Plaintiff.  To the contrary, various mental evaluations revealed Keeter showed adequate concentration, an intact memory, an alert disposition, orientation in all spheres, good or fair judgment, logical thought processes, and adequate responses to psychological treatment.  R. 466, 534, 539-40, 542-44, 547-48, 591, 660, 673, 675-77.

Other aspects of Dr. Kay's opinion are also troubling.  First, Dr. Kay indicates Keeter is complying with "physical therapy" and "counseling."  R. 587.  However, the information included in the record shows Keeter declined both physical therapy and vocational counseling. R. 488, 504, 506, 511, 540.  Second, Dr. Kay's report is internally inconsistent in that it states Keeter can participate in "skills training in an occupation within his/her health-related limitations" one or two days per week, but also states Keeter does not "require additional evaluation and/or assessment to determine . . . current and/or future work capacity."  R. 587. Third, Dr. Kay's form report, which states Keeter is complying with medication, is at odds with his letter which notes Keeter "is sometimes not able to maintain himself on the medicine."  R. 587-88.  Fourth, Dr. Kay finds Plaintiff is unable to work for a period between two hundred and seventy (270) days and permanent, but does not conclude how long Plaintiff has allegedly been disabled.  R. 586.  Accordingly, Dr. Kay's opinion does not establish with certainty the required minimum of twelve (12) months' disability required by statute.  42 U.S.C. §§ 416(i), 423(d)(1)(A).

Dr. Kay's "To Whom it May Concern" letter is equivocal and dampens the limited impact of his form report.  R. 586-88.  Particularly, Dr. Kay writes Keeter "is sometimes not able to maintain himself on the medicine and has times when he is unable to go to work, even if he were pain free."  R. 588.  Dr. Kay provides no indication of how frequent the bouts occur so as to allow the ALJ to determine the impact on Plaintiff's employability.  R. 588.  Additionally, Dr. Kay states Keeter is unable to work presently, and possibly on a permanent basis, without specifying the anticipated minimum length of his disability.  R. 588.

Regarding the persuasiveness of Dr. Kay's explanation, his opinion is lacking.  Of the three pages detailing the opinion, the first two pages are a form medical evaluation which do

very little to explain or justify the conclusions indicated by checking the various boxes on the form.  R. 586-87.  Additionally, Dr. Kay's letter is vague and conclusory.  R. 588.  Accordingly, the Court concludes Dr. Kay's three page opinion is vague, conclusory and does not sufficiently explain its determinations to entitle it to the deference sought by Plaintiff.

### 2.  *ALJ's Ruling*

The ALJ in this matter drafted a ten page, single spaced decision to explain his findings. R. 20-29.  In concluding whether Plaintiff's limitations precluded him from working, the ALJ made a credibility determination of Keeter, who testified before him, and found his "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible."  R. 25.  The ALJ referred to the objective tests concerning Plaintiff's physical limitations and the reports of his examining and treating physicians in weighing Keeter's claims. R. 25-26.  Further, the ALJ stated he "considered the medical source opinions of the claimant's treating and examining source, in accordance with 20 C.F.R. §§ 404.1527(d) and 416.927(d)" before specifically listing those factors.  R. 27.  The ALJ next choose to "give no evidentiary weight to the opinion of Dr. Daniel Kay . . . [as it] is not supported by the medical evidence."  R. 27.  The ALJ credited the opinion of Dr. Gurtner, whose position conformed to the other medical evidence in the case.  R. 27.

Plaintiff asserts the ALJ failed to properly consider the factors set out in 20 C.F.R. §§ 404.1527(d) despite the ALJ's statement that he considered the factors and his listing of them. Doc. 14 at 9-11; R. 27.  In support of his argument, Plaintiff cites <u>Newton v. Apfel</u>, 209 F.3d 448, 456 (5th Cir. 2000) and <u>Winford v. Chater</u>, 917 F. Supp. 398, 401 (E.D. Va. 1996) (Smith, J.).  Plaintiff's reliance on each of these cases is misplaced.

In <u>Newton</u>, a case which arose from the Northern District of Texas, the United States

Court of Appeals for the Fifth Circuit merely restated the law that the ALJ "is required to

consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of

the claimant's treating specialist." <u>Newton</u>, 209 F.3d at 456.  The court in <u>Newton</u> did not

require a certain level of articulation regarding each element, as urged by Plaintiff, but rather

considered the ALJ's conclusion in light of the other medical information.  <u>Newton</u>, 209 F.3d at

456-57.  Additionally, the result reached in <u>Newton</u> tends to support the conclusion the ALJ

reached in this case, as the court found in <u>Newton</u> that the ALJ erred by relying on a "conclusory

and unsubstantiated opinion that Newton was not disabled."  <u>Newton</u>, 209 F.3d at 457.  Thus, for

the ALJ to rely on Dr. Kay's conclusory and unsubstantiated opinion would have been to commit

the error <u>Newton</u> seems to prohibit.  <u>Newton</u>, 209 F.3d at 457.

The opinion in <u>Winford</u> also does not stand for a detailed articulation requirement as

Plaintiff supposes.  Doc. 14 at 9.  Rather, in <u>Winford</u>, the Court merely stated the ALJ is required

to "consider the weight to be given to the physician's opinion by applying five factors identified

in the regulation." <u>Winford</u>, 917 F. Supp. at 401.  Finally, the Court in <u>Winford</u> overturned the

ALJ's decision based upon a review of the evidence in the case under the substantial evidence

standard, but did not dismiss the ALJ's decision as insufficiently articulated.  <u>Winford</u>, 917 F.

Supp. at 401.

Moreover, Plaintiff's position does not account for the Fourth Circuit opinions upholding

decisions not to credit the conclusion of a treating physician.  <u>Russell v. Barnhart</u>, 58 Fed. Appx.

25, 30 (4th Cir. 2003) (<u>per curiam</u>) (unpublished) (upholding the refusal to credit the psychiatric

evidence of two doctors as the medical evidence failed to substantiate their positions); <u>Byrd v.</u>

<u>Apfel</u>, No. 98-1781, 1998 U.S. App. LEXIS 32628, at *10-11 (4th Cir. December 31, 1998) (<u>per</u>

curiam) (unpublished) ("The ALJ properly did not accord [the physician's] opinion great or controlling weight because [the physician's] opinion was contracted by the objective evidence in the record, and other medical opinion evidence."); Justus v. Apfel, No. 97-2711, 1998 U.S. App. LEXIS 27054, at *10-12 (4th Cir. October 23, 1998) (per curiam) (unpublished) (affirming the ALJ's decision to discount a doctor's opinion in light of claimant's ability to drive, shop for cigarettes, mow the lawn, walk for exercise, and be reasonably articulate and communicative). Particularly, the Fourth Circuit has upheld a factually similar ALJ ruling in Kearse v. Massanari, 73 Fed. Appx. 601, 603 (4th Cir. 2003) (per curiam) (unpublished).  In Kearse, the ALJ was justified in discrediting a medical source opinion, because the claimant was still able to understand, remember, carry out simple instructions, cut wood, mow grass, occasionally shop, make his bed, sweep, mop, cook and clean his room.  Kearse, 73 Fed. Appx. at 603. Additionally, in Stanley v. Barnhart, 116 Fed. Appx. 427, 429 (4th Cir. 2004) (per curiam) (unpublished), the Fourth Circuit stated an ALJ was justified in discounting a medical source opinion as the claimant's "daily life activities were not affected to the extent she alleged."

Accordingly, the Court concludes the ALJ properly considered the relevant factors in weighing the opinion of Dr. Kay, and **FINDS** the ALJ's determination to discount Dr. Kay's opinion is consistent with the remainder of the substantial evidence in the case.

## B.  State Agency Doctors

Plaintiff next argues the ALJ erred "by relying on the findings of the medical consultant who never personally examined Keeter," namely, the State Agency doctor.  Doc. 14 at 11.  The Court concludes this argument is without merit as the ALJ is required to "consider opinions of State agency medical or psychological consultants" as they are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. §

404.1527(f)(2).  Plaintiff's contention that these State Agency opinions should not have been considered because Dr. Kay issued his conclusory opinion later than their opinions is without merit, as to adopt this argument would be to allow the claimant to file a last second opinion to defeat all other previous opinions.  Doc. 14 at 11.  Additionally, the Court **FINDS** the opinions of the several State Agency physicians are corroborative of each other, and also supported by substantial evidence in the record.

C.  Substantial Evidence

Plaintiff lastly maintains the ALJ erred in ruling the claimant was not disabled, or stated differently, that he could "perform light unskilled work."  Doc. 14 at 3, 8-11.  Upon review of the extensive medical findings in this case, as detailed in Section II of this Opinion and Order, the Court **FINDS** the ALJ's ruling is supported by substantial evidence.

V.  CONCLUSION

Upon extensive review of the full record, it is apparent that the ALJ thoroughly examined the proffered facts, evidence, and testimony.  The Court **FINDS** that substantial evidence supports the ALJ's decision.  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.  The decision of the Commissioner is **AFFIRMED**.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.


_____/s/_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 5, 2007